UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EASTERN SAVINGS BANK, FSB     :
                                      :
       Plaintiff,               :
                                        :
v.                                    :     Case No. 3:14-cv-1059(DJS)
                                        :
DONATA C. MARCUS and         :
JAN MARCUS,              :
                                        :
       Defendants.            :

RULING AND ORDER

Plaintiff Eastern Savings Bank, FSB ("Eastern") brings this foreclosure action against pro se defendants Donata C. Marcus and Jan Marcus (jointly, "the Marcuses").[1]  Eastern has moved for partial summary judgment on the issue of liability.  For the reasons that follow, Eastern's motion (doc. # 16) is granted.

I.  FACTS[2]

On March 23, 2005, the Marcuses borrowed $330,000.00 from Eastern pursuant to a note ("the Note") and secured by a mortgage ("the Mortgage") to Eastern. The loan was to be repaid over 30 years at an interest rate of 10.99% per annum. Payments were to be made to Eastern on the first of every month in the amount of $3,140.18. Eastern is the current holder of both the Note and the Mortgage.

_____

[1] Though defendants are proceeding pro se, Jan Marcus is an attorney licensed in Connecticut.

[2] Eastern did not include a Local Rule 56(a)1 Statement in its moving papers but remedied this error by including one with its reply. (Doc. # 24).

-1-

As a result of economic setbacks, the Marcuses had difficulty meeting their monthly payments under the terms of the Note, particularly beginning in the year 2010 and continuing thereafter. On a number of occasions the Marcuses asked Eastern to consider modifying the interest rate specified in the Note but Eastern would not agree to such a modification.

On more than one occasion Eastern granted a request by the Marcuses to defer past due payments on the Note until the end of the loan period. In June 2011 Eastern and the Marcuses entered into an agreement pursuant to which Eastern "agreed to forbear from continuing [a] foreclosure action" provided the Marcuses made a series of payments, due beginning on June 15, 2011, and ending on August 1, 2011. (Doc. # 23-1, at 10-11).

After they entered into the forbearance agreement, the Marcuses continued to regularly submit late payments to Eastern. On February 14, 2014, Eastern sent the Marcuses a letter notifying them that their loan was in default and that they were required to pay $14,619.86 by March 21, 2014, in order to cure the default. The letter informed the Marcuses of Eastern's option to accelerate the balance due should they not cure the default by the specified date. The letter further advised the Marcuses of their "right to reinstate the loan after acceleration," as well as their "right to assert in court the non-existence of a default or any other defense to acceleration and foreclosure or sale." (Doc. # 16-2, at 26).  The letter also provided the Marcuses with information about loss mitigation and counseling options that might be available to them. On June 20, 2014, Eastern sent the Marcuses a second letter that provided them with information about Connecticut's Emergency Mortgage Assistance Program. A third letter regarding housing counselors approved by both the federal and state governments was sent to the Marcuses on July 24, 2014.

In June 2014 Eastern declined an offer made by Joseph Korff, who was an acquaintance of the Marcuses, to buy the Note for $290,000.00. At that time the remaining principal balance on the loan was in excess of $316,000.00.

On July 25, 2014, Eastern filed this action seeking foreclosure.

## II.  SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is proper if, after the completion of discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute." *American International Group, Inc. v. London American International Corp.*, 664 F.2d 348, 351 (2d Cir. 1981) (internal quotation marks omitted).

A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). The party opposing summary judgment, however, "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club*, 112 F.3d 98, 101 (2d Cir. 1997) (internal quotation marks omitted).  If "little or no evidence may be found in support of the nonmoving party's case,"

summary judgment may be appropriate. *Gallo v. Prudential Residential Services, Ltd. Partnership,* 22 F.3d 1219, 1223–24 (2d Cir. 1994).

## III.  DISCUSSION

Eastern argues that the Marcuses "can raise no genuine issues as to any material facts that would prevent [Eastern] from obtaining summary judgment as a matter of law. (Doc. # 16-1, at 4). Specifically, Eastern contends that "the [Marcuses] signed the note and the defendant Donata C. Marcus signed the mortgage deed, that the [Marcuses] failed to make the regular monthly payment due January 1, 2014 and each month thereafter, that the loan was accelerated and that Eastern is the current owner and holder of the note and mortgage deed." (*Id.* at 5).

"[A] court may properly grant summary judgment as to liability in a foreclosure action if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense." *GMAC Mortgage, LLC v. Ford*, 144 Conn. App. 165, 176 (2013). In order to establish its prima facie case, the foreclosing party must "prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied." *Id.*

There is no genuine dispute that Eastern is the holder of the Note and the Mortgage or that the Marcuses were in default when they did not make the monthly payment due January 1, 2014, or any subsequent payments.  With regard to the third element of the prima facie case, the satisfaction of all conditions precedent, the Marcuses raise two special defenses: (1) the notice of default sent by Eastern was defective; and (2) Eastern failed to act in good faith in its dealings with the Marcuses. "A valid special defense at law at a foreclosure proceeding must be legally

sufficient and address the making, validity or enforcement of the mortgage, the note or both. . . . Where the plaintiff's conduct is inequitable, a court may withhold foreclosure on equitable considerations and principles." *Fidelity Bank v. Krenisky*, 72 Conn. App. 700, 705 (2002) (internal quotation marks omitted).   The Court will address each of these defenses below.

### A.  Sufficiency of Default Notice

The Marcuses argue that the notice Eastern provided was defective because it neither provided them with a breakdown of the amount owed nor provided them with accurate information as to what would be needed to reinstate the loan.

"Notices of default and acceleration are controlled by the mortgage documents. Construction of a mortgage deed is governed by the same rules of interpretation that apply to written instruments or contracts generally, and to deeds particularly. . . . A promissory note and a mortgage deed are deemed parts of one transaction and must be construed together as such." *Citicorp Mortgage, Inc. v. Porto*, 41 Conn. App. 598, 602 (1996) (internal quotation marks omitted).

"Notice provisions in mortgage documents usually require default notices to contain specific information, which serves a very clear and specific purpose; it informs mortgagors of their rights so that they may act to protect them."  *Krenisky*, 72 Conn. App. at 710. Thus, "when the terms of the note and mortgage require notice of default, proper notice is a condition precedent to an action for foreclosure." *Id.* (internal quotation marks omitted).

The terms of the Mortgage pertaining to notice are as follows:

> Acceleration; Remedies. Lender shall give notice to Borrower
> prior to acceleration following Borrower's breach of any
> covenant or agreement in this Security Instrument. . . . The
> notice shall specify: (a) the default; (b) the action required to

cure the default; (c) a date, not less than 30 days from the
date the notice is given to Borrower, by which the default
must be cured; and (d) that failure to cure the default on or
before the date specified in the notice may result in acceleration
of the sums secured by this Security Instrument and foreclosure
or sale of the Property. The notice shall further inform Borrower
of the right to reinstate after acceleration and the right to assert
in court the non-existence of a default or any other defense of
Borrower to acceleration and foreclosure or sale. If the
default is not cured on or before the date specified in the notice,
Lender at its option may require immediate payment in full
of all sums secured by this Security Instrument without further
demand and may invoke any of the remedies permitted by
Applicable Law. Lender shall be entitled to collect all expenses
incurred in pursuing the remedies provided in this Section 22,
including, but not limited to, reasonable attorneys' fees and
costs of title evidence.

(Doc. # 16-2, at 23, ¶ 22). The Note also provides for a notice of default to be sent 30 days before

"the Note Holder may require [the Borrower] to pay immediately the full amount of principal"

and interest owed to the Lender and further requires that any notice sent to the Lender be

delivered or mailed to the property address listed on the Note. (*Id.* at 6, ¶¶ 6, 7).

Thus, per the Note and the Mortgage, the notice sent by Eastern had to specify the action required

to cure the default but not, as the Marcuses suggest, a breakdown of the amount owed.

Eastern's February 14, 2014 letter, the operative notice of default:[3] (1) is in writing, (2)

was mailed to plaintiff's primary address, (3) specifies the default (the failure to make the

payment due January 1, 2014), (4) specifies the action required to cure the default (payment of

$14,619.86), (5) gave defendants at least 30 days to cure the default (until March 21, 2014), (6)

explains that failure to cure may result in acceleration of the loan and foreclosure, and (7)

---

[3]   In opposing Eastern's motion for summary judgment the Marcuses  also address letters
sent by Eastern on September 4, September 19, and October 1, 2013. The notice of default, the
operative notice here, is the letter sent by Eastern on February 14, 2014.

informed the Marcuses of their right to reinstate the loan after acceleration and their right to assert in court the non-existence of a default or any other defense to acceleration and foreclosure or sale.  (Doc. # 16-2, at 26).   The Court finds that this letter complies with the relevant notice provisions of the Note and the Mortgage and that a reasonable jury could not conclude that the notice was legally deficient.

### B.  Implied Covenant of Good Faith and Fair Dealing

The Marcuses also argue that Eastern's conduct in refusing to either consider modifying the terms of the Note or entertain efforts to sell the loan to a third party for less than full value constituted a breach of the duty of good faith and fair dealing implicit in their contractual relationship. Eastern counters that it had no legal obligation to either modify the terms of the Note or sell the Note to a third party.

"It is axiomatic that the duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship." *Atlantic Mortgage & Investment Corp. v. Stephenson*, 86 Conn. App. 126, 143 (2004) (internal quotation marks and alterations omitted).  To constitute a breach of this covenant, "the acts by which [one party] allegedly impedes the [other party's] right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith . . . . Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights and duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." *De La Concha of Hartford , Inc. v. Aetna Life Insurance Co.*, 269 Conn. 424, 433 (2004) (internal quotation marks and citations omitted).

Connecticut courts historically barred special defenses in foreclosure actions that were "not relate[d] to the making, validity or enforcement of the notes and mortgages," *Southbridge Associates, LLC v. Garofalo*, 53 Conn. App. 11, 19 (1999),[4] although the Connecticut Supreme Court has never "expressed a finite list of equitable defenses available in a foreclosure action." *TD Bank, N.A. v. M.J. Holdings, LLC*, 143 Conn. App. 322, 328 (2013).  While a duty of good faith and fair dealing would attach to an actual modification agreement, as it would to any contract, "if there is no [valid loan modification] agreement, there can be no implied duty of good faith and fair dealing with respect thereto." *Id.* at 336. The Marcuses have not alleged the existence of a valid, enforceable loan modification agreement. Consequently, allegations that Eastern failed to act in good faith and deal fairly by refusing to negotiate a loan modification agreement do not state a valid defense to Eastern's foreclosure action.

There is no duty to modify the terms of a note or sell the note to a third party prior to initiating a foreclosure action when such a duty is not expressed in the loan documents. *See Garofalo*, 53 Conn. App. at 17. Here, the language of the Note requires that the Marcuses make monthly payments in the amount of $3,140.18. The language of both the Note and the Mortgage permit Eastern to accelerate the balance in the event of a breach of that payment agreement.

---

[4]The Note provides that it "shall be governed by federal law. To the extent that reference to state law is necessary, then this Note shall be governed by the provisions of Subtitle 10 of Article 12 of the Commercial Law Article of the Annotated Code of Maryland, as amended from time to time, except to the extent any of such provisions is preempted by federal law." (Doc. # 16-2, at 7, ¶ 11). The Mortgage provides that it "shall be governed by federal law and the law of the jurisdiction in which the Property is located [i.e., Connecticut]." (Id. at 21, ¶ 16).  Both the plaintiff and the defendants rely exclusively on Connecticut case law in presenting their arguments supporting or opposing the motion for summary judgment and no party has suggested that any provision of the Commercial Law Article of the Annotated Code of Maryland has a bearing on the issues to be decided by this Court. In this regard the Court notes that the defendant Jan Marcus, while proceeding pro se, is an attorney licensed in Connecticut.

There is no dispute that the Marcuses breached the payment agreement. The loan documents do not contain a provision requiring Eastern to negotiate a modification or sale of the Note prior to initiating a foreclosure action.

The implied covenant of good faith and fair dealing "cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." *Id.* at 16. Imposing a duty on Eastern to either negotiate a modification of the Note or to sell the Note to a third party for less than the full payoff amount would "achieve a result contrary to the clearly expressed terms of [the] contract." *Id.* This the Court cannot do. Additionally, there is nothing before the Court to suggest that any terms in the loan documents are contrary to public policy

Viewing the evidence in the light most favorable to the Marcuses, as this Court must do, Eastern's refusal to modify the interest rate and terms of the Note, as well as its failure to agree to sell the Note for less than the full payoff amount,  cannot be considered bad faith, because Eastern did not "neglect or refus[e] to fulfill some duty or some contractual obligation . . . ."  *De La Concha*, 269 Conn. at 433.  In fact, the evidence shows that Eastern did attempt to work with the Marcuses. The parties negotiated multiple loss mitigation agreements prior to Eastern's February 14, 2014 letter, and, after it sent this letter, Eastern sent defendants several notices about homeownership counseling and Connecticut's Emergency Mortgage Assistance Program. In sum, a reasonable juror could not infer, from the evidence presented, that Eastern's actions violated the implied covenant of good faith and fair dealing.

## CONCLUSION

For the reasons stated above, the plaintiff Eastern Savings Bank, FSB's Motion for Partial

Summary Judgment as to Liability (**doc. # 16**) is **GRANTED**.

The Plaintiff Eastern Savings Bank, FSB shall file a motion for judgment of foreclosure by October 19, 2015.

SO ORDERED this 16th   day of September,  2015.

_____/s/ DJS_____
Dominic J. Squatrito
United States District Judge